IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LARRY D. COLLINS                                                                              PLAINTIFF

vs.                              Civil No. 1:07-cv-01102

MICHAEL J. ASTRUE                                                DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

      Larry D. Collins ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 4).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

      Plaintiff filed applications for DIB and SSI on May 4, 2005. (Tr. 12). Plaintiff alleged he was disabled due to problems with his right hand. (Tr. 32, 34, 108). These applications were initially denied on May 24, 2005 and were denied again on reconsideration on October 27, 2005. (Tr. 32-33). On January 6, 2006, Plaintiff requested an administrative hearing on his applications.

---

[1] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

(Tr. 28). The hearing was held on February 15, 2007 in Little Rock, Arkansas. (Tr. 229-258). Plaintiff was present and was represented by counsel, Denver Thornton, at this hearing. *See id.* Plaintiff and Vocational Expert ("VE") Millard Sales testified at this hearing. *See id.* On the date of this hearing, Plaintiff was fifty-three (53) years old, which is defined as "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d) (2008), and had his high school diploma. (Tr. 232, 247).

On May 17, 2007, the ALJ entered an unfavorable decision denying Plaintiff's request for DIB and SSI. (Tr. 12-19). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act through December 31, 2005. (Tr. 14, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since May 31, 2001, his alleged onset date. (Tr. 14, Finding 2). The ALJ determined that Plaintiff had the severe impairments of "a history of remote (30+ years ago) traumatic injury to the dominant right hand, with loss of flexion at the DIP and PIP joints," a report of right shoulder and elbow pain, a history of episodic dizziness and syncope, and a documented history of drug (cocaine) abuse or dependency and alcohol abuse. (Tr. 14, Finding 3). The ALJ also determined, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments contained in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 15, Finding 4).

In this decision, the ALJ also evaluated Plaintiff's subjective complaints and determined his Residual Functional Capacity ("RFC"). (Tr. 15-18, Finding 5). At the administrative hearing, Plaintiff claimed that due to his hand injury, his right hand would swell and throb with pain. (Tr. 237). Plaintiff claimed he had to wear a glove and a sling to keep his hand warm and to stop his

2

hand from swelling and throbbing. (Tr. 237). Plaintiff claimed he injured three of the fingers (small finger, index finger, and long finger) thirty years ago while cooking dinner. (Tr. 239-240). Plaintiff claimed he could not use his right hand due to the injury to his fingers. (Tr. 240). Plaintiff claimed he could not work in cold weather because his hands would become numb in cold weather and he could not work in hot weather because he would become dizzy in hot weather. (Tr. 249-251). Plaintiff also claimed he had previously passed out due to an irregular heart beat. (Tr. 245). Finally, Plaintiff claimed he suffered from a seizure disorder and back pain. (Tr. 18).

The ALJ evaluated these subjective complaints and allegedly disabling symptoms pursuant to the requirements and factors of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984). (Tr. 15-18). After reviewing these factors, the ALJ discounted Plaintiff's subjective complaints of disabling pain and other limitations based upon several findings, including the following: (1) Plaintiff's medical records were not consistent with his complaints of disabling pain; (2) Plaintiff reported on January 10, 2005 that his elbow and shoulder symptoms had improved after occupational therapy, despite his complaints of disabling elbow and shoulder pain; (3) Plaintiff did not seek follow-up treatment with any doctor for his hand pain from January 10, 2005 until February 7, 2006, despite his complaints of disabling hand pain; (4) Plaintiff's medical records provide no support for Plaintiff's complaints of a seizure disorder, a heart problem, or back pain; (5) Plaintiff did not follow his doctor's prescribed course of treatment regarding his alcohol consumption; (6) Plaintiff offered no evidence that he had ever been medically advised by any treating or examining physician that his symptoms were of such severity as to completely preclude involvement in SGA. (Tr. 15-18).

After discounting Plaintiff's subjective complaints, the ALJ then reviewed all the medical evidence and hearing testimony and determined Plaintiff's RFC. (Tr. 15, Finding 5). Specifically,

3

the ALJ determined Plaintiff retained the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift-carry and push-pull up to 20 pounds occasionally and 10 pounds frequently, with the ability to stand and/or walk up to 6 hours in an 8-hour workday (1-2 hours in a continuous time period) with an ability to sit without significant limitation. The claimant would experience a 20% loss of grip ability to the right dominant hand, and he would be precluded from performing fine manipulation with the right hand. Finally, the claimant should avoid work at unprotected heights or around dangerous moving machinery, and he should avoid temperature extremes.

(Tr. 15-18, Finding 5). *See* 20 C.F.R. § 416.967.

The ALJ then determined Plaintiff retained the ability to perform his Past Relevant Work ("PRW") as a poultry line worker. (Tr. 18-19, Finding 6). Plaintiff and the VE testified at the administrative hearing regarding this issue. (Tr. 229-258). Plaintiff's PRW included work as a poultry line worker (sedentary, unskilled work). (Tr. 254). Based upon this testimony regarding Plaintiff's PRW and based upon Plaintiff's RFC, the ALJ determined Plaintiff retained the ability to perform his PRW as a poultry line worker.[2] (Tr. 18-19, Finding 6). The ALJ then determined that Plaintiff had not been under a "disability," as defined by the Act, at any time from May 31, 2001 through the date of his decision or through May 17, 2007. (Tr. 19, Finding 7).

On May 22, 2007, Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (Tr. 6). *See* 20 C.F.R. § 404.984(b)(2). On July 27, 2007, the Appeals Council declined to review this determination. (Tr. 3-5). The parties consented to the jurisdiction of this Court on October 18, 2007. (Doc. No. 4). Both parties have filed appeal briefs (Doc. Nos. 6-7), and this case is now ready for decision.

---

[2] The ALJ also noted in his opinion that even if Plaintiff could not perform his PRW as a poultry line worker, he could still perform other work existing in significant numbers in the national economy. (Tr. 19). However, because the ALJ could have ended his disability determination at Step Four, this Court will not address the ALJ's finding regarding other work existing in significant numbers in the national economy.

4

## 2. Applicable Law:

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

## 3. **Discussion:**

Plaintiff brings the present appeal claiming the following: (A) the ALJ erred in finding Plaintiff was capable of performing his PRW as a poultry line worker and (B) the ALJ improperly relied upon the VE's response to his hypothetical question. (Doc. No. 6, Pages 4-11). In response, Defendant argues that the ALJ properly considered Plaintiff's subjective complaints, properly determined Plaintiff retained the RFC to perform his PRW as well as other jobs existing in significant numbers in the national economy, and properly developed the record. (Doc. No. 7, Pages 4-12). This Memorandum Opinion will address both of Plaintiff's arguments.

### A. Past Relevant Work Determination

Plaintiff argues that he is unable to perform his PRW as a poultry line worker[3] due to his right-hand injury. (Doc. No. 6, Pages 4-8). Plaintiff claims that the findings of Dr. J. Grant, M.D. support his claim that he is unable to use his right hand. *See id.* at 5. Plaintiff claims Dr. Grant found he could barely hold a pen and write, which indicates that he also could not perform work as a poultry line inspector. *See id.* Additionally, Plaintiff claims that the *Dictionary of Occupational Titles* does not include a job listing for a "poultry inspector helper," and the VE improperly determined that this job, as performed, existed in significant numbers in the national economy. *See id.* at 5-6. In response, Defendant argues that the ALJ properly assessed Plaintiff's RFC and properly determined that Plaintiff could perform not only his PRW but also other work existing in the national economy. (Doc. No. 7, Pages 8-11).

This Court finds the ALJ properly determined Plaintiff retained the ability to perform his PRW as a poultry line worker and properly ended his disability determination at Step Four of the Analysis. In his appeal brief, Plaintiff argues that he cannot perform his PRW as a poultry line worker because of his right hand injury. (Doc. No. 6, Pages 4-8). This right hand injury, however, occurred over thirty years ago, and Plaintiff underwent surgery for this injury in 1975 or 1976. (Tr. 239-240, 246). Since that time, Plaintiff has worked at several different jobs, including working as a bush hogger, poultry line worker, and stacker at a lumber company. (Tr. 252-254).

Specifically, of these three jobs, the ALJ found Plaintiff could perform his PRW as a poultry line worker. (Tr. 18-19, Finding 6). Plaintiff worked as a poultry line worker from 1992 until 1998. (Tr. 76). His job consisted of cutting poultry with a knife at the direction of the poultry inspector.

---

[3] Plaintiff characterizes this job as a "poultry inspector helper." (Doc. No. 6, Page 6). For ease of reference, this Court will refer to this job as it was found by the ALJ: "poultry line worker."

(Tr. 242-243). He testified that he was able to either sit or stand at this job. (Tr. 253). The VE testified that because this work involved sitting and lifting less than ten pounds, this work could be classified as sedentary, unskilled work. (Tr. 254).

Plaintiff now claims he can no longer perform this work because his hand, which was injured thirty years ago, started causing him increased in pain since approximately 2003 or 2004. (Doc. No. 6, Pages 7-8). This increased pain appears to be due to arthritis in his right hand from his hand injury in 1970 or due to an injury or a reinjury he sustained to his right wrist on approximately October 9, 2004.[4] (Tr. 216). Despite these complaints of disabling hand pain, however, Plaintiff did not consistently seek medical treatment for this hand pain and did not consistently take pain medication for his right hand pain.

For example, on January 10, 2005, Plaintiff was treated for his hand, elbow, and shoulder pain. (Tr. 129). Plaintiff was also prescribed Naproxen[5] for this pain. (Tr. 127). Plaintiff, however, did not seek further treatment for his pain until February of 2006. (Tr. 127). Between January of 2005 and February of 2006, Plaintiff also stopped taking his prescription pain medication and started taking over-the-counter pain medication. (Tr. 125-127). Plaintiff's failure to seek medical treatment and his failure to take his prescription pain medication are inconsistent with his claims of disabling hand pain. *See Shannon v. Chater,* 54 F.3d 484, 486 (8th Cir. 1995) (stating, "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").

---

[4] Plaintiff did not tell his physician *how* he injured his wrist. (Tr. 132-141). However, Plaintiff was apparently using illegal drugs during this time period, and his injury could have resulted while he was using those drugs. Plaintiff told his physician during the same appointment that he just done cocaine, smoked marijuana, and drank the day before. (Tr. 137). At the administrative hearing, Plaintiff denied making those admissions. (Tr. 236).

[5] Naproxen is used to treat pain or inflammation caused by conditions such as arthritis. *See* Drug Information Online, available at www.drugs.com/naproxen.html (last visited Aug. 7, 2008).

On May 17, 2005, Dr. Grant examined Plaintiff's right hand injury. (Tr. 108-114). During this examination, Dr. Grant reported that Plaintiff only had a strength of one in five in his right hand, only had a 20% grip strength in his right hand (as compared to a normal grip strength), and could "barely" hold a pen and write. (Tr. 112). Plaintiff claims these results establish that he is disabled. (Doc. No. 6, Pages 5, 7). These results, however, reflect Plaintiff's limitations as a result of his hand injury and hand surgery thirty years ago, not his limitations as a result of a recent injury. The fact that Plaintiff was able work at three different jobs since his hand was injured indicates that these findings should not be afforded substantial weight.

Furthermore, Plaintiff raises additional arguments related to his PRW that need to be addressed. First, Plaintiff references Social Security Regulation 96-9p in his appeal brief, claiming this regulation "provides that most unskilled sedentary jobs require good use of both hands and fingers, i.e., bilateral manual dexterity." (Doc. No. 6, Page 10). This Regulation, however, provides that *most* (but not all) unskilled sedentary jobs require bilateral manual dexterity. Plaintiff performed all three of his past jobs, including his work as a poultry line worker, without full bilateral manual dexterity. Since Plaintiff has established he can perform these jobs even with his injury, he cannot now come back *after the fact* and claim that he cannot work at those jobs with his hand limitations.

Second, Plaintiff claims that the job he performed as a poultry line worker does not exist in significant numbers in the national economy. (Doc. No. 6, Pages 6-7). Plaintiff claims that this job does not exist in significant numbers in the national economy because its job description is not included in the *Dictionary of Occupational Titles. See id.* The issue, however, of whether a job exists in significant numbers in the national economy is an issue that is *only* addressed if Step Five of the Analysis is reached. *See* 20 C.F.R. § 404.1520. In this case, the ALJ ended the Analysis at

9

Step Four. Therefore, the ALJ was not required to find that Plaintiff's PRW existed in significant numbers isn the national economy.

Third, Plaintiff claims the ALJ erred by ignoring the Medical-Vocational Guidelines ("Grids"), which would dictate a finding of disability. (Doc. No. 6, Page 11). Specifically, Plaintiff claims that an "individual approaching advanced age (ages 50-54), should Grid in under <u>Table I, Sedentary Work, Rule 201.12</u>, i.e., closely approaching advanced age, high school graduate–does not provide for direct entry into skilled work–previous work experience unskilled." *See id.* However, as noted above, the ALJ ended his disability determination at Step Four of the Analysis. (Tr. 12-19). The Grids are used at Step Five of the Analysis to determine whether, considering a claimant's age, education, and past work experience, a claimant can perform other work existing in significant numbers in the national economy. *See Pearsall v. Massanari,* 274 F.3d 1211, 1219-20 (8th Cir. 2001). Since the ALJ did not, and was not required to, proceed to Step Five, this argument is without merit.

### B. Hypothetical to the Vocational Expert

Plaintiff claims the ALJ erred in posing his hypothetical to the VE. (Doc. No. 6, Pages 8-11). Plaintiff claims the ALJ's hypothetical was improper because he failed to give credit to Plaintiff's testimony regarding his chronic pain. *See id.* In response, Defendant claims the ALJ properly evaluated Plaintiff's subjective complaints and discounted them for legally sufficient reasons. (Doc. No. 7, Pages 4-8).

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and

20 C.F.R. § 416.929.[6] *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski,* 739 at 1322. The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *See id.* The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity.

---

[6] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

*See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, the ALJ properly evaluated Plaintiff's subjective complaints and discounted them for legally sufficient reasons. In his opinion, the ALJ considered the *Polaski* factors and discounted Plaintiff's subjective complaints based upon several inconsistencies between Plaintiff's testimony and his medical records, including the following: (1) Plaintiff's medical records were not consistent with his complaints of disabling pain; (2) Plaintiff reported on January 10, 2005 that his elbow and shoulder symptoms had improved after occupational therapy, despite his complaints of disabling elbow and shoulder pain; (3) Plaintiff did not seek follow-up treatment with any doctor for his claimed disabling pain from January 10, 2005 until February 7, 2006, despite his complaints of disabling hand pain; (4) Plaintiff's medical records provide no support for Plaintiff's complaints of a seizure disorder, a heart problem, or back pain; (5) Plaintiff did not follow his doctor's prescribed course of treatment regarding his alcohol consumption; (6) Plaintiff offered no evidence that he had ever been medically advised by any treating or examining physician that his symptoms were of such severity as to completely preclude involvement in SGA. (Tr. 15-18). Because this determination is supported by several valid reasons, it is entitled to deference. *See Lowe,* 226 F.3d at 971-72. Accordingly, the ALJ did not err in discounting Plaintiff's subjective complaints and in posing his hypothetical to the VE regarding those complaints.

Furthermore, in addition to this claim regarding his subjective complaints, Plaintiff also argues that the ALJ's hypothetical was improper because the ALJ was unclear as to how "cool" Plaintiff's job as a poultry line worker was. (Doc. No. 6, Page 7). However, even though the ALJ did not give the VE an *exact* temperature, he did tell the VE that Plaintiff could not work in "temperature extremes." (Tr. 255). Therefore, the ALJ did give the VE direction as to the

temperature Plaintiff could handle. *See id.* Additionally, even if the ALJ *had omitted* this information from his hypothetical to the VE, the ALJ's disability determination would still be supported by substantial evidence. At Step Four of the Analysis, the ALJ is not required to rely upon the VE's responses to a properly-phrased hypothetical in order for his or her decision to be supported by substantial evidence. *See Banks v. Massanari,* 258 F.3d 820, 828 (8th Cir. 2001) (holding that "[b]ecause the ALJ was not required to utilize the services of a VE to begin with, he [the ALJ] did not err in failing to further clarify the VE's opinion by eliciting further testimony from the VE"). Instead, the ALJ can base a disability determination upon his or her own finding regarding whether Plaintiff retains the RFC to perform his or her PRW. *See id.*

### 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 20th day of August, 2008.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE